# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    MJ20-392 |
| One (1) SUBJECT PARCEL bearing confirmation | ) | |
| no. 9505 5127 4626 0176 8946 50, more fully | ) | |
| described in Attachment A | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of Controlled Substances & Unlawful Use of Communication Facility, |
| 21 U.S.C. § 843 | (U.S. Mails) to Distribute Controlled Substances. |

The application is based on these facts:

✓ See Affidavit of Postal Inspector Mitchel Vanicek, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Mitchel Vanicek, Postal Inspector USPIS
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⊙ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   7/1/2020

*Judge's signature*

City and state:   Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO 2020R00527 [VONG to NGUYEN]

1  **STATE OF WASHINGTON**　　　)
　　　　　　　　　　　　　　　　　　　)
2  **COUNTY OF KING**　　　　　　　)

3

4                                        **AFFIDAVIT**

5  　　　I, Mitchel Vanicek, being first duly sworn on oath, depose and say:

6                                       **BACKGROUND**

7  　　　1.　　　I am a United States Postal Inspector with the United States Postal

8  Inspection Service, assigned to the Seattle Division Headquarters office in Seattle

9  Washington, and have been employed as a Postal Inspector for fifteen years.  I am

10  authorized to conduct investigations on behalf of the United States Postal Inspection

11  Service.  I have previously conducted investigations involving federal violations of Title

12  18, United States Code, 1956(a)(1) (Laundering of Monetary Instruments), Section 1343

13  (Wire Fraud), Section 1344 (Bank Fraud), and other federal crimes.  I have previous

14  experience regarding the collection and analysis of computer evidence in relation to

15  criminal investigations.  I have received extensive training in financial crimes

16  investigations including: Financial Records Examination and Analysis, Interview and

17  Interrogation Techniques, Bank Secrecy Act Data and Funds Transfers, Money

18  Laundering, Fraud and Identity Theft, the Dark Web, and other Financial Crimes related

19  trainings, seminars, conferences, and events

20  　　　2.　　　**Duties, Training & Experience.**  As part of my duties, I investigate the

21  use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of

22  drug trafficking, as well as other instrumentalities associated with drug trafficking, in

23  violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession

24  with intent to distribute controlled substances), and 843(b) (unlawful use of a

25  communication facility, including the U.S. mails, to facilitate the distribution of

26  controlled substances and proceeds from the sale thereof).  As set forth below, my

27  training and experience includes identifying parcels with characteristics indicative of

28  criminal activity.  During the course of my employment with Postal Inspection Service, I

AFFIDAVIT OF MITCHEL VANICEK - 1
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   have participated in many criminal investigations involving suspicious parcels and

2   controlled substances.

3       3.      The information contained in this affidavit is based upon knowledge I

4   gained from my investigation, my personal observations, my training and experience, and

5   investigation by other law enforcement officers. Because the purpose of this affidavit is

6   limited to setting forth probable cause to search the SUBJECT PARCEL described

7   below, I have not set forth every fact of which I am aware pertaining to the investigation.

8       4.      Through my training and experience, I am aware the United States Postal

9   Service (USPS) mail system is often used to transport controlled substances and/or the

10   proceeds from the sale of controlled substances throughout the United States.  I have

11   learned and observed that sometimes drug traffickers put controlled substances and

12   proceeds in the same parcel.  I also know drug traffickers prefer mail/delivery services

13   such as Express and Priority Mail because of the reliability of these services, as well as

14   the ability to track the article's progress to the intended delivery point.  When a drug

15   trafficker learns a mailed article has not arrived as scheduled, he/she can become

16   suspicious of any delayed attempt to deliver the item.

17       5.      In addition, I am aware the USPS Express and Priority Mail services were

18   custom-designed to fit the needs of businesses by providing overnight delivery for time

19   sensitive materials.  Business mailings often contain typewritten labels, are in flat

20   cardboard mailers, and usually weigh less than eight (8) ounces.  In addition, businesses

21   using corporate charge accounts print their account number on the Express and Priority

22   Mail label in order to expedite transactions with USPS.

23       6.      Based on my training and experience concerning the use of Express and

24   Priority Mail for the transportation of controlled substances and/or proceeds, I am aware

25   that these parcels usually contain some or all of the following characteristics (which are

26   different than characteristics of parcels being sent by legitimate businesses):

27           a.      Unlike typical Express and Priority Mail business mailings which
                usually have typed labels, parcels containing controlled substances
28              and/or proceeds often have handwritten address information.  In

AFFIDAVIT OF MITCHEL VANICEK - 2
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

addition, the address information often contains misspelled words or incomplete/incorrect addresses. This is done in an effort to help conceal the true identities of the individuals involved.

b.      The handwritten label on Express and Priority Mail parcels containing controlled substances and/or proceeds do not contain a business account number and/or credit card number.  This often indicates that the sender likely paid cash.  A credit card or business account number would more likely enable law enforcement officers to connect the parcel to identifiable individuals.

c.      Express and Priority Mail parcels containing controlled substances and/or proceeds are often distinguishable from typical business mailings as they do not bear any advertising on the mailing container/box, and are typically mailed from one individual to another.

d.      The sender and/or recipient addresses on Express and Priority Mail parcels containing controlled substances and/or proceeds are often either  fictitious, or are persons not associated with the addresses listed in USPS or law enforcement databases.

e.      The zip codes for the sender addresses on Express and Priority Mail parcels containing controlled substances and/or proceeds are often different from the zip codes of the post offices from where the parcels were mailed.

f.      Express and Priority Mail parcels containing controlled substances and/or proceeds are often heavily taped with tape on the seams of the parcel, in an apparent effort to conceal scent.

g.      Express and Priority Mail parcels containing controlled substances and/or proceeds often include a waiver of signature requirement upon delivery.

7.      Agents who encounter a parcel with any or all of the above characteristics often further scrutinize the parcel by, among other tactics, conducting address

AFFIDAVIT OF MITCHEL VANICEK - 3
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

verifications using law enforcement databases and conducting trained narcotic-detecting canine examinations.

## ITEM TO BE SEARCHED

8.     As set forth in Attachment A, this affidavit is made in support of an application for a search warrant for one USPS Priority Mail Express parcel, hereinafter referred to as "SUBJECT PARCEL."  SUBJECT PARCEL is believed to contain controlled substances or proceeds from the sale of controlled substances. SUBJECT PARCEL is further described as follows: One Priority Mail parcel addressed to "Kim Nguyen, 16214 114th AVE SE, Renton, WA 98055," with a return address of "Kelly Vong, 2314 Pine Ridge Rd, Naples, FL 34109."  This parcel is a flat rate parcel measuring approximately 12" x 9" x .75".  The parcel weighs approximately 1 pound and 9.4 ounces.  This parcel is postmarked June 24, 2020, from Naples, FL, and carries $7.75 in postage. The tracking number associated with the parcel is 9505 5127 4626 0176 8946 50.

## ITEMS TO BE SEIZED

9.     The application requests that law enforcement officers and agents be authorized to seize the following from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of mailing and distribution of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances):

a.     Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, fentanyl, oxycodone, and Oxycontin;

b.     Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

c.     Controlled substance-related paraphernalia;

AFFIDAVIT OF MITCHEL VANICEK - 4
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

e.      Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

f.      Fingerprints and/or handwriting, to identify who handled and/or mailed the parcel.

**THE INVESTIGATION**

10.     On June 26, 2020, the U.S. Postal Inspection Service was conducting an interdiction, investigating parcel information in many parts of Washington State, including Renton, WA.  The emphasis for the interdiction was targeting inbound Express and/ or Priority Mail parcels and envelopes possibly containing narcotics and/ or monetary proceeds derived from illegal drug trafficking activity.

11.     The SUBJECT PARCEL was initially identified as a suspicious parcel due to the fact that the parcel is marked with a handwritten label.  In addition, the SUBJECT PARCEL was shipped from Naples, Florida.  I know through my training and experience that Washington is a source state for marijuana parcels shipped to other states including Florida.    Postage for the SUBJECT PARCEL was paid in cash.  I know through my training and experience that these are tactics commonly used by drug traffickers using the U.S. Mails in an attempt to elude detection by law enforcement.

12.     On June 27, 2020, the SUBJECT PARCEL arrived at the Renton, Washington Post Office.  I telephoned the Renton Post Office and instructed them to forward the SUBJECT PARCEL to the Postal Inspection Service office located at 301 Union Street, Seattle, WA 98101.   On June 29, 2020, the SUBJECT PARCEL arrived at 301 Union Street, Seattle, WA 98101.  Also on June 29, 2020, I telephoned Detective Sturgill who is a trained narcotics dog handler.  Sturgill was first available to meet me on June 30, 2020.

13.     I checked law enforcement and US Postal databases and found 16214 114th AVE SE, Renton, WA 98055 is a true and deliverable address and Kim Nguyen does

AFFIDAVIT OF MITCHEL VANICEK - 5
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

associate with the address.  Please note, on May 11, 2020, your affiant seized $30,250.00 in small bills, which were mailed to Kim Nguyen at this address.   Your affiant also seized $11,000.00 in small bills, which were mailed to Kim Nguyen at this address on June 25, 2020.

14.     I checked law enforcement and US Postal databases and found 2314 Pine Ridge Rd, Naples, FL 34109 is a true and deliverable address.  I could not associate Kelly Vong to the address.

15.     On June 30, 2020, I met Detective Sturgill and his narcotics detection dog "Apollo" at 10700 27th AVE S, Tukwila, WA 98168.   At approximately 10:30 a.m., we met at the aforementioned US Postal facility.   At 10:38 a.m., Detective Sturgill and Apollo searched a large warehouse room at the aforementioned Post Office.  Detective Sturgill told me the dog did not alert to any odors of narcotics.  At approximately 11:05 a.m., I placed the SUBJECT PARCEL in the same warehouse room out of the view of Apollo and Detective Sturgill.  At approximately 11:15 a.m., Detective Sturgill again searched the warehouse room with his narcotics detection dog Apollo.  At approximately 11:18 a.m., Detective Sturgill observed an immediate change in Apollo's posture and behavior when Apollo performed a "sit," alerted to the odor of narcotics emanating from the location where I had hidden the SUBJECT PARCEL.  Detective Sturgill's affidavit describing canine Apollo's training and qualifications are attached to this affidavit and incorporated by reference.

16.     The SUBJECT PARCEL was referred to me for further investigation and search warrant preparation and is currently stored at the U.S. Postal Inspection Service office located at 301 Union Street, Seattle, WA 98101.

//

//

//

AFFIDAVIT OF MITCHEL VANICEK - 6
USAO# 2020R00527 [VONG to NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

18.     Based on the facts set forth in this Affidavit, as well as the attached affidavit (incorporated herein by reference) of Detective Sturgill, I believe there is probable cause to conclude that the SUBJECT PARCEL contains controlled substances, currency, documents, or other evidence, more fully identified in Attachment B, that relates to the mailing and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution  and possession with intent to distribute controlled substances) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances).

_____
Mitchel Vanicek, Affiant
U.S. Postal Inspector
United States Postal Inspection Service

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 1st day of July, 2020.

_____
Hon. BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF MITCHEL VANICEK - 7
USAO# 2020R00527 [VONG to NGUYEN]

1

2

**ATTACHMENT A**

Parcel to be searched

3      19.      One Priority Mail parcel addressed to "Kim Nguyen, 16214 114th AVE SE,

4   Renton, WA 98055," with a return address of "Kelly Vong, 2314 Pine Ridge Rd, Naples,

5   FL 34109."  This parcel is a flat rate parcel measuring approximately 12" x 9" x .75".

6   The parcel weighs approximately 1 pound and 9.4 ounces.  This parcel is postmarked

7   June 24, 2020, from Naples, FL, and carries $7.75 in postage. The tracking number

8   associated with the parcel is 9505 5127 4626 0176 8946 50.

9



10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATACHMENT A - 1
PARCEL TO BE SEARCHED
USAO# 2020R00527 [VONG TO NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**ATTACHMENT B**
Items to be seized

3

4

5

6

The following items that constitute evidence, instrumentalities, or fruits of violations of Title 21, United States Code, Section(s) 841(a)(1) and 843(b), unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances:

7

8

9

     a.    Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, fentanyl, oxycodone, and Oxycontin;

10

11

     b.    Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

12

     c.    Controlled substance-related paraphernalia;

13

14

     d.    Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

15

16

17

     e.    Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

18

     f.    Fingerprints and/or handwriting, to identify who handled and/or mailed the parcel.

19

20

21

22

23

24

25

26

27

28

ATACHMENT B - 1
ITEMS TO BE SEIZED
USAO# 2020ROO527 [VONG TO NGUYEN]

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Tukwila Police Department
## Anti-Crime Team K-9

Detective James Sturgill
June 30, 2020

---

**DETAILS**

On June 30, 2020 at 1038 hours, I, Tukwila Police Detective/ USPIS TFO J. Sturgill assisted USPIS with a suspicious parcel at the Seattle Processing and Distribution Center located at 10700 27th Avenue South, Tukwila, Washington 98168.  I first used my canine partner (Apollo) to search a warehouse to clear it of any odors of narcotics. USPIS Inspector M. Vanicek then placed the suspicious parcel in the warehouse out of the view of Apollo and I. At approx. 1113 hours, Apollo and I started the search for the suspicious parcel by sniffing the warehouse in a systematic manner. Upon encountering the parcel, Apollo stopped, had a change of behavior and sat.  When Apollo sits, it's an indication to me that he could smell the odor of narcotics coming from the parcel.  I rewarded Apollo with a rubber ball.  At approx. 1118 hours, Apollo alerted on the following parcel:

**Tracking #: 9505 5127 4626 0176 8946 50**

**Sender:  Kelly Vong, 2314 Pine Ridge Rd, Naples, FL 34109**

**Recipient: Kim Nguyen, 16214 114th Ave SE, Renton, WA 98055**

This concludes my involvement in the case.

**OFFICERS TRAINING/EXPERIENCE**

I, James Sturgill have been a commissioned law enforcement officer for the past seventeen years. I am employed by the City of Tukwila and have recently been assigned to the Tukwila Anti-Crime Team; I am currently the K-9 Narcotic's Detective assigned to that unit. During my career, I have investigated several narcotics-related crimes in and around the City of Tukwila.

My current duties include investigating federal and state narcotics violations within the jurisdiction of the County of King, the State of Washington, and the United States.

During my career, I have received extensive training to include: 720 hours at the Washington State Criminal Justice Training Center's Basic Law Enforcement Academy.  This training includes numerous hours of instruction on Criminal Law, Property Crimes, Crimes against Persons, basic report writing, Narcotics Investigations and recognition (including the recognition of marijuana, cocaine, heroin and methamphetamine).  I have received further training to assist me with narcotics investigations and arrests. In 2006, I received 48 hours of Gang Investigation and Street Crimes training.  These courses included gang and narcotic recognition, buy bust operations, surveillance and interview techniques, how narcotics

are transported and where narcotics can be hidden in vehicle's, homes, and in humans. In 2013, I received 24 hours of similar training by attending Gangs in the Northwest and Street Survival. I also attended How to Manage a CI in 2013. This course focused on how to interview suspects of narcotics related offenses and how to turn that person into a confidential informant. This course included interview techniques and basic search warrant preparation and service. In 2014, 2015 and 2018, I received nationally recognized narcotics training provided by California Narcotics Officers Association (CNOA). In 2014, 2015 and 2018 I received nationally recognized narcotics training provided by Washington State Narcotics Investigators Association (WSNIA). Both CNOA and WSNIA are 4-day classroom courses containing numerous narcotic related classes. In 2015 and 2018, I attended Operation Jetway Interdiction training. This 32-hour classroom course is conducted by EPIC/DEA and focuses on the many ways that police officers can interdict drugs and drug proceeds from DTO's. In 2017 and 2019, I received 32 hours of classroom interdiction training with the nationally recognized International Narcotics Interdiction Association (INIA). In 2016, I completed the 200-hour Washington State Narcotic's Canine Course. During the 6-week course, my canine partner "Apollo" was trained to identify and alert on the odors of Cocaine, Heroin, Methamphetamine and Marijuana. During the early part of my career, I worked numerous cases with the Tukwila Anti-Crime (TAC) Team, working as a uniformed take down officer. I assisted the TAC Team with several buy walks and buy busts during my career. I also personally investigated numerous VUCSA cases while working as a patrol officer in the City of Tukwila.

By virtue of my assignment with the TAC Team, I am authorized to conduct investigations into violations of the Controlled Substances Act. In doing so, I have conducted a variety of investigations into violations ranging from simple possession of narcotics to the sales of narcotics. Because of this experience and training, I am familiar with common methods of investigating drug trafficking and have become familiar with the methods of operation of drug traffickers, their use of cellular telephones, telephone pagers, emails, and other electronic means of communication to further their narcotics trafficking activities; and their use of numerical codes, code words, counter-surveillance, and other methods of avoiding detection by law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, and laundering.

I have participated in the execution of narcotics search warrants. Most commonly, these warrants authorize the search of locations ranging from the residences of drug traffickers and their coconspirator/associates, to locations used to manufacture, distribute and hide narcotics and drug proceeds. Materials searched for and often recovered in these locations include packaging materials, manufacturing items, scales, weapons, documents and papers reflecting the distribution of controlled substances and the identity of coconspirator associates, and papers evidencing the receipt, investment, and concealment of proceeds derived from the distribution of controlled substances.

**CANINE QUALIFICATIONS**

I'm currently assigned to the Tukwila Anti-Crime Team and handle a narcotics canine as a collateral duty. In November 2016, I completed the state mandated requirement of 200 hours of canine narcotics specific training and met the canine performance standards set by the Washington Administrative Code (W.A.C.) 139-05-915 for the Narcotic Dog Handler (General Detection).

On November 13, 2016 Canine "Apollo" and I were certified as a team by the Washington State Police Canine Association. We recertified on January 8th, 2019 in Bothell, WA. The WSPCA is an organization with voluntary membership to improve training and effectiveness of canine teams statewide. The WSPCA certification is also voluntary with more stringent standards than the state requirement. The

substances trained on by the team are cocaine, heroin, methamphetamine and marijuana.

Apollo is a passive alert canine and he is trained to give a "sit response" after having located the specific location the narcotics odor is emitting from.  The handler is trained to recognize the changes of behavior the canine exhibits when it begins to detect the odor of narcotics.   The odor can be emitting from the controlled substance itself, or it can be absorbed into items such as currency, clothing, containers, packaging material, etc.  Narcotic smelling canines such as "Apollo" have an inherently keen sense of smell and will continue to alert on the container or item depending on the length of exposure to the controlled substance, and the amount of ventilation the item is exposed to.

Apollo's reward for finding narcotics / narcotic related items is a rubber ball or leather strap.  Apollo and I continue to train on a regular basis to maintain our proficiency as a team.
On-going training includes or will include:
-   Training in all areas of interdiction, such as vehicles, boats, truck tractor and trailers, schools, currency, parcels and mail, airports and airplanes, bus and bus depots, storage units, residences, trains and train depots, prisons, motels, apartments, etc.
-   Training on various quantities of controlled substances, ranging from grams to ounces, and pounds when available.
-   Training on novel odors, such as odors that are distracting, masking, or new.
-   Training on controlled negative (blank) testing, in which all objects or locations have no contraband present
-   Training in "Double Blind" scenarios
-   Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, etc.

I maintain both training logs and field activity/application reports.  Both are available for review upon request.  At this time the team has found over 1000 narcotics substance training aids and 151 applications in the field resulting in the seizure of narcotics and currency.

Canine Apollo is trained to detect the presence of marijuana, heroin, methamphetamine, and cocaine. Canine Apollo cannot communicate which of these substances he has detected. Canine Apollo can detect minuscule amounts of these four substances. Canine Apollo cannot communicate whether the detected substance is present as residue or in measurable amounts. Despite these limitations, canine Apollo's alert provides probable cause to believe that evidence of a Violation of a Uniform Controlled Substance Act may be found where the canine provides a positive alert for the odor of controlled substances.

I certify or swear under the penalty of perjury the foregoing statement is true and correct.

Detective James C. Sturgill
Tukwila Police TAC Team
Badge #151